Dear Mr. Jones:
This letter is in response to your predecessor's request for an opinion as to the meaning of certain provisions in §137.073, RSMo 1980 Supp. Your first question is as follows:
 (a) § 137.073.1(1) uses the words "substantial portion of the parcels of real property within a county" in defining "general reassessment". What is a "substantial portion" under the law?
Section 137.073.1(1), RSMo 1980 Supp., defines "general reassessment" as "changes in value, entered in the assessor's books, of a substantial portion of the parcels of real property within a county resulting wholly or partly from reappraisal of value or other actions of the assessor or county equalization body or ordered by the state tax commission or any court." The legislature carefully refrained from setting forth an objective standard, such as a percentage, for determining when a general reassessment had occurred. Therefore, in construing the term "substantial," it would be improper to refer to a cardinal number or a number expressed as a percentage. Rather, the term must be used in its ordinary and normal meaning. Webster's Dictionary defines "substantial," among other things, as "considerable in amount, value or the like; large." Applying this definition to the term as used, a "general reassessment" can be said to have occurred when a large number of the parcels of real property in any given county have been changed in value as a result of a reappraisal of value by the assessor or other assessing officials. What constitutes a "large" number in any given county would depend upon the number of parcels in that county. The county clerks or the assessor in St. Louis City are in the best position to evaluate and determine whether a general reassessment has occurred and the General Assembly has wisely left such determination to them. See § 137.073.2, RSMo 1980 Supp.
Your second question is as follows:
 (b) § 137.073.2 and § 137.073.3 each provide for tax rate rollback upon the increase of assessments in a political subdivision. How should these sections be applied when property assessments increase in a taxing jurisdiction due to both a general reassessment and natural growth?
The answer to this question must be premised upon a determination by the county clerk or the assessor of St. Louis City that a general reassessment has occurred. If so, the rollback to be utilized is contained in § 173.073.2, RSMo 1980 Supp., even though the values listed in the assessor's books show an increase because of natural growth as well as general reassessment. The Legislature dealt with natural growth as well as reassessment in § 173.073.2 by providing that the rollback to occur when general reassessment has been accomplished is to be to the extent necessary to produce the same amount of tax revenue as the previous year, in addition to a percentage of the previous year's revenues equal to the preceding valuation factor of the political subdivision. The "preceding valuation factor," as defined in § 137.073.1(2), creates a picture of the natural growth occurring in any given county based on an average of the annual percentage changes in total assessed valuation over the previous three or five years, whichever is greater. When a rollback becomes necessary because of increases resulting from general reassessment, application of the statutory formula in § 137.073.2, RSMo 1980 Supp., will account for natural growth on the basis of prior experiences within each particular county.
Your final question is as follows:
 (c) § 137.073.3 pegs school district revenues to be raised to the amount "as set forth in estimates filed by school districts for the current year as required by section 164.011, RSMo". What is the "current year" as described by this section?
The overriding purpose of the rollback provisions of § 137.073.3, RSMo 1980 Supp., is to prevent a taxing authority from realizing a "windfall" over anticipated needs because of a radical change in tax revenues caused by higher assessment values. Although the assessment date for property in Missouri is January 1 of the calendar year, the assessor's tax book showing the changes is not completed and returned to the county governing board until May, and not available to the governing body of political subdivisions within the counties until July. See §§ 137.245, 137.375, and 137.510, RSMo 1978. For township organization counties, the applicable section for preparation of the tax book is § 137.425, RSMo 1978. The taxes to be realized are not known until the certificates of the rates levied by the county court, school districts, and other political subdivisions authorized by law to make levies are given to the county clerk who then extends the taxes upon the assessor's tax book based upon the stated values contained therein. This is not completed and turned over to the collector until October of each given year. See § 137.290, RSMo 1980 Supp.
The question involving "current year," as that term is applied to school districts, arises because school districts do not operate on a calendar year. A "school year" is defined in § 164.041, RSMo 1978, as commencing on the first day of July and ending on the thirtieth day of the following June. Section 164.011, RSMo 1978, requires each school board to annually estimate the amount of tax money needed for the ensuing year and the rate necessary to secure that amount and to forward this information to the county superintendent on or before May 15. In other school districts, the estimate must be submitted to the county clerk on or before July 15. The estimation of money needed for the ensuing year is based upon anticipated revenues available after the tax book is returned to the collector on October 31. For this reason, it is our opinion that the term "current year" as applied to school districts in § 137.073.3, RSMo 1980 Supp., refers to the estimates filed by the school boards in May or July of the calendar year in which the rollback is necessary. For example, to determine whether a rollback in the tax rates for 1981 is necessary, the applicable estimate is the estimate for the year July 1, 1981, through June 30, 1982. Those estimates, although for the ensuing school year, are based upon taxes to be realized for the calendar year once the tax books are available to the county collectors on October 31. Only the "windfall" over and above that estimate is subject to rollback under § 137.073.3, RSMo 1980 Supp., because of a ten percent or greater rise in assessed valuation.
Very truly yours,
 JOHN ASHCROFT Attorney General